**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALICIA M. GARAFALO,**

                                    **Plaintiff,**

                                                            **1:11-CV-0087**
                                                            **(MAD/RFT)**

**CITY OF SARATOGA SPRINGS, NEW YORK**
**COMMISSIONER OF PUBLIC SAFETY FOR**
**THE CITY OF SARATOGA SPRINGS, NEW YORK,**
**CITY OF SARATOGA SPRINGS, NEW YORK**
**POLICE DEPARTMENT, EDWARD F. MOORE**
**and MICHAEL J. WELCH,**

                                    **Defendants.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

TABNER, RYAN AND KENIRY, LLP          Thomas R. Fallati, Esq.
18 Corporate Woods Boulevard, Suite 8
Albany, New York 12211
_Attorneys for Plaintiff_

BAILEY, KELLEHER & JOHNSON, P.C.      Nannette R. Kelleher, Esq.
Pine West Plaza 5, Suite 507
Washington Avenue Extension
Albany, New York 12205
_Attorneys for Defendants_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

        Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants

violated of her First and Fourteenth Amendment rights.  Specifically, plaintiff claims that

defendants retaliated against her, violated her right to Equal Protection and subjected her to false

arrest as a result of events that occurred on October 11, 2009.[1]  In the complaint, plaintiff also asserts causes of action based upon New York state law for false arrest, abuse of process, *prima facie* tort, negligence and intentional infliction of emotional distress.  Presently before the Court is defendants' motion for summary judgment.  (Dkt. No. 24).

## BACKGROUND[2]

The facts herein are largely disputed.  This cases arises out of incidents that occurred on October 11, 2009.  On October 11, 2009, at approximately 12:00 a.m., plaintiff was with her boyfriend, Raymond Lefco ("Lefco"), Jared LaChance ("LaChance"), Sara Uruskyj and others at Saratoga City Tavern ("City Tavern").  Shortly after they arrived, an incident took place on the fourth floor of City Tavern involving a New York State Trooper, Kenneth Ahigian ("Ahigian").  The fourth floor of City Tavern was crowded and loud.   The parties and witnesses present different accounts of what transpired in City Tavern.[3]  Plaintiff claims that an altercation arose after Lefco apologized to Ahigian for bumping into him.  Plaintiff claims that Ahigian identified himself as a state trooper and began uttering threatening, offensive, obscene and abusive language directed towards Lefco.  Plaintiff contends that she stood between Lefco and Ahigian in an attempt to diffuse the situation.  Plaintiff claims that Ahigian began yelling and calling her names

---

[1] In the complaint, plaintiff alleges that the incidents occurred, "[a]t or around midnight on October 10, 2009 and the early hours of October 11, 2009".

[2] Defendants submitted a Statement of Material Facts pursuant to this Court's Local Rules, in support of their motion for summary judgment.  Plaintiff properly responded to the Statement and submitted a Counter-Statement pursuant to this Court's local rules.  Defendants properly responded to plaintiff's Statement.  Therefore, to the extent supported by the record, the background set forth in this section is taken from: (1) defendants' Statement of Material Facts and plaintiff's responses thereto; (2) plaintiff's Statement of Material Facts and defendants' responses thereto; (3) the exhibits and evidence submitted by defendants in support of the motion for summary judgment; and (4) the exhibits and evidence submitted by plaintiff in opposition to defendants' motion for summary judgment. The facts recited are for the relevant time period as referenced in the amended complaint

[3] In support of the factual assertions, plaintiff and defendants rely upon affidavits and statements that are not in proper admissible form.  To the extent that the parties have not objected to the admissibility of any statements, the statements will be considered herein.

including "whore". Plaintiff claims that Ahigian pushed her with his arm causing her to fall backward and to land on the floor.

Plaintiff claims that she got up from the floor and went down the staircase to the first floor of City Tavern. Plaintiff, Lefco, Uruskyj and others left City Tavern and Lefco placed a call to 911. Plaintiff claims that while they were outside, Ahigian approached the group and repeatedly told the group that they were going to be arrested. According to plaintiff, Ahigian continued to engage in threatening and abusive conduct. The parties agree that Ahigian told the party that he was a police officer and as Ahigian approached Lefco, plaintiff placed herself between the two men. Plaintiff claims that Ahigian then pushed her on the back of her head causing her to fall over a nearby fence.

Ahigian testified that Lefco intentionally "elbowed" him as he attempted to walk through the crowd on the fourth floor of City Tavern. Ahigian stated that Lefco cursed at him and the two men "screamed" at each other. Ahigian testified that plaintiff walked in their direction and pushed Ahigian while yelling "[g]et the fuck out of here". Ahigian responded and told plaintiff to get her hands off of him or that she would be arrested. According to Ahigian, plaintiff responded by cursing and pushed him again. Ahigian "swatted her hands" and then claims that Lefco punched him in the face. Ahigian also claims that LaChance jumped on him. Ahigian testified that City Tavern employees escorted all of them from the club. Ahigian admits that he followed Lefco and plaintiff onto Caroline Street and told them not to leave because they were going to be arrested. Ahigian testified that plaintiff cursed and that he cursed and that plaintiff pushed him again and told him to leave them alone. Ahigian claims that he "swatted" plaintiff's right hand.

In the early morning hours of October 11, 2009, the City of Saratoga Springs Police Department ("Police Department") received a call that a fight had broken out at City Tavern.

3

Sergeant Michael J. Welch ("Sgt. Welch") responded, with two to three other officers.[4]  When Sgt. Welch arrived on the scene, City Tavern employees directed him to a group of people on Caroline Street.  The group of people included plaintiff, Raymond Lefco, LaChance and Ahigian.  Sgt. Welch observed Ahigian, dressed in plain clothes, with a bloody shirt and laceration over a partially closed left eye.  When Sgt. Welch asked Ahigian what occurred, Ahigian told the officer that Lefco and LaChance assaulted him.  Lefco admitted to punching Ahigian while at City Tavern.  The police officers arrested Lefco and LaChance.  Plaintiff was angry that Lefco was arrested and was advised by Sgt. Welch to "step back and calm down".  Welch claims that plaintiff continued to "yell and swear" at him.  Welch advised plaintiff that if she did not calm down, she would be arrested.  Ahigian told Welch that plaintiff started the altercation and should also be arrested.  Plaintiff was interviewed and told officers that Ahigian pushed her. Plaintiff was not arrested at the scene.  Lefco was placed in handcuffs and transported to police headquarters.  Ahigian left the scene for treatment for his injuries.  The officers secured additional statements from witnesses at the scene including Blake Saunders, a security guard at City Tavern, Jeremy Meyers, an employee of Desperate Annies, and Vincent Perent, an employee of the Bullpen.  Meyers stated that plaintiff was standing between Ahigian and Lefco while outside City Tavern.  Saunders stated:

> [t]wo minutes after midnight, I saw two white males raise their fists and take a combative stance facing a third white male later identified to be Ken Ahigian.  They stepped towards Ken and he raised his hands in a defensive posture . . . As soon as Ken stepped out into the street the two aggressors yelled "Fuck you mother fucker" and they went after him again.  I didn't see what started the altercation but Ahigian said a girl pushed him before the two men attacked him.

---

[4] According to the record, one of the responding officers was Officer Cotter.

Plaintiff walked from the scene to the police station.  Plaintiff signed a statement and asked that charges be filed against Ahigian.

Over the next four days, the police continued to investigate the incident and took ten witness statements.  On October 13, 2009, plaintiff appeared at the police department, with counsel, to re-iterate her demand that charges be filed against Ahigian.  Plaintiff claimed that she was injured in the altercation but did not realize it until the next day.  Plaintiff's injuries were photographed and she was told to appear in City Court on October 14, 2009 to sign a complaint against Ahigian.  On October 13, 2009, Ahigian appeared at the police department to execute a complaint against plaintiff.  Ahigian spoke with Sgt. Welch regarding the charges and was advised that plaintiff would not be charged with assaulting an officer because Ahigian was off-duty at the time.  Sgt. Welch prepared three complaints against plaintiff, which were sworn to by Ahigian, for obstructing governmental administration and second degree harassment.  The same day, Sgt. Welch spoke with the District Attorney's office and discussed plaintiff's request for a complaint against Ahigian.  Later that evening, Sgt. Welch telephoned plaintiff and stated that he did not intend to prepare a complaint for her signature that day and that he would "get back to her".

On October 14, 2009, plaintiff's counsel faxed a letter to Edward F. Moore, Chief of Police of the City of Saratoga Springs Police Department.  Counsel claimed that plaintiff was assaulted and harassed by Ahigian and recounted plaintiff's request that charges be filed against Ahigian.  Counsel provided the name of witnesses who could corroborate plaintiff's version of events.  Counsel also stated:

> At this point I find the entire situation very troubling as legitimate criminal victims are being denied their right to file criminal charges seemingly because the alleged defendant is a member of the New York State Police.  It is further noteworthy that this alleged defendant

was with his brother who is a member of your department who may
have used his police status to prevent an arrest of his brother.

On October 14, 2009, Chief Moore responded to plaintiff's counsel and stated that it was

his, "understanding from Sgt. Welch that he simply deferred the date of signing of any additional

complaints from both sides of this incident until our officers have an opportunity to bring more

clarity to this investigation, which is not yet completed".

On October 14, 2009, officers from the City of Saratoga Springs Police Department

appeared at plaintiff's place of employment and presented plaintiff with an appearance ticket.

According to plaintiff, the officers told her that she was required to appear in City Court the

following day to be arrested, processed and to answer criminal charges.

On October 14, 2009, plaintiff filed a complaint with the New York State Police regarding

Ahigian's conduct on October 11th.  On January 28, 2010, the State Police determined the

complaint to be "unfounded".

On March 4, 2010, the charges against plaintiff were adjourned in contemplation of

dismissal in City Court for the City of Saratoga Springs, New York.  On October 8, 2010,

plaintiff filed a lawsuit in New York State Supreme Court against Ahigian alleging that Ahigian

made false statements to the police concerning plaintiff.  Plaintiff also claimed that she sustained

physical and emotional injuries due to Ahigian's conduct.

While the state lawsuit was pending, plaintiff filed the within action against defendants

claiming that they retaliated against her in violation of her First Amendment right to free speech,

violated her right to equal protection and falsely arrested her in violation of her Fourth

Amendment rights.

## DISCUSSION

## I.    Summary Judgment Standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## II.    42 U.S.C. § 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the

plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, *reh. denied*, 445 U.S. 920 (1980)). As such, for a plaintiff to recover in a section 1983 action, she must establish a causal connection between the acts or omissions of each defendant and any injury or damages she suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979)) (other citation omitted). Under § 1983, plaintiff asserts three claims: (1) First Amendment retaliation; (2) Equal Protection; and (3) False Arrest.

## A.     First Amendment Retaliation

Defendants argue that plaintiff's retaliation claim is subject to dismissal because plaintiff does not have a constitutional right to file criminal charges against another individual. Specifically, defendants argue that plaintiff's claim is erroneously based upon defendants' refusal to file charges against Ahigian despite plaintiff's continuing demands. Plaintiff argues that defendants misinterpret the basis for her retaliation claim. Plaintiff does not claim that she has a constitutional right to file charges against Ahigian. Rather, plaintiff claims that her First Amendment cause of action is based upon defendants' decision to initiate charges against plaintiff in retaliation for plaintiff's complaints against Ahigian.

In cases such as this, where a private citizen alleges that state actors took some action against her in retaliation for her exercise of her First Amendment rights, the plaintiff must satisfy the elements of a First Amendment retaliation claim set forth in *Curley v. Vill. of Suffern*, 268 F.3d 65 (2d Cir. 2001). *Griffin-Nolan v. Providence Wash. Ins. Co.*, 2005 WL 1460424, at *6 -9 (N.D.N.Y. 2005). In *Curley*, during a political campaign, the plaintiff accused the police

commissioner and police chief of covering up and failing to discipline the actions of another village police officer. *Curley*, 268 F.3d at 73. The plaintiff alleged that his arrest, a number of months after the election, was in retaliation for such criticism. *Id*. In considering the First Amendment claim, the court held that to prevail on this free speech claim, plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. *Curley*, 268 F.3d at 73. In *Curley*, there was no dispute regarding the first element. Defendants' do not address these elements. Rather, defendants rely upon the argument that the officers had probable cause to arrest plaintiff.

### 1.    Elements of Retaliation Claim

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Kerman v. City of New York,* 261 F.3d 229, 241 -242 (2d Cir. 2001) (the plaintiff's right to criticize the police and threaten to sue without reprisal (taking him to Bellevue Hospital) clearly satisfied the first prong of this test) (citing *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)). "Speech directed at police officers will be protected unless it is 'likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest'". *Kerman*, 261 F.3d at 241 (citation omitted).

In her first cause of action, plaintiff alleges:

> Defendants' actions against plaintiff were undertaken in retaliation for, and were motivated and substantially caused by, plaintiff's protected speech, and defendants' actions towards plaintiff effectively chilled plaintiff's exercise of her first amendment right.

> All of defendants' actions set forth herein were undertaken under the color of state law and were willful, malicious and undertaken with reckless indifference to plaintiff's rights under federal law, including, but not limited to, the First and Fourteenth Amendments to the Constitution of the United States.

9

Pl. Cmplt. at ¶ 30, 31.

Plaintiff was not arrested at the scene of the incident.  The parties do not dispute that when she appeared at the police station on the day of the incident that she was not detained or arrested. The parties also do not dispute that while plaintiff was at the police station that day, plaintiff requested that charges be filed against Ahigian.  Further, according to the record, two days after the incident, plaintiff again appeared at the police station on October 13, 2009 and asked that charges be filed against Ahigian.  At that time, plaintiff claimed she was assaulted, harassed and injured by Ahigian.  In addition, on October 14, 2009, the day plaintiff was arrested, plaintiff's counsel wrote a letter to Chief Moore with names of possible witnesses who would confirm plaintiff's version of events.  In addition, the letter contained allegations of department misconduct based upon the fact that Ahigian was a New York State Trooper.[5]  Viewing the evidence in a light most favorable to plaintiff, the Court finds that plaintiff has established that she engaged in protected speech when she criticized Ahigian and asked that charges be brought against Ahigian.

Defendants have not presented any argument regarding the second or third elements. "Private citizens alleging retaliation for their criticism of public officials" are generally required to show that "they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in 'actual chilling' of their exercise of their constitutional right to free speech." *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011).  In some cases, various forms of concrete harm have been substituted for the "actual chilling" requirement. *Id.*  Here, plaintiff claims she was arrested as a

---

[5] While the record is unclear as to the timing of this letter, based upon the fact that the letter contains no reference to plaintiff's arrest, the Court, viewing all evidence in a light most favorable to plaintiff, will presume that the letter was written prior to plaintiff's arrest.

result of defendants' retaliatory conduct.  Therefore, plaintiff is not required to allege actual chilling in order to adequately plead a First Amendment retaliation claim.  *Vaher v. Town of Orangetown, N.Y.*, 2013 WL 42415 at *17 (S.D.N.Y. 2013).

##### 2.    Probable Cause

Relying upon *Curley* and other Second Circuit holdings, defendants argue that plaintiff's retaliation claim fails because the police had probable cause to arrest plaintiff.  Plaintiff claims that *Curley* is distinguishable from the facts at hand and further argues that based upon the record, there are issues of fact that prevent summary judgment.

Generally, probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed ... a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (the court may determine as a matter of law whether or not probable cause existed "if there is no dispute as to the pertinent events and the knowledge of the officers").  Probable cause is evaluated on the totality of the circumstances. *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007) (citations omitted). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley*, 268 F.3d at 69.  To defeat summary judgment, plaintiff is required to come forward with specific facts creating a genuine issue with respect to probable cause. *See id.*

In *Curley*, the plaintiff claimed that conflicting accounts of the incident should have prompted a more thorough investigation.  The Court rejected plaintiff's argument and held:

> [W]e have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee. Moreover, we rejected an argument similar to that made by plaintiff here in *Ricciuti,* where an arresting officer chose to believe the

> claimed victim's account of a fight based on his visible injuries, notwithstanding the alleged assailant's cries of innocence. We observed that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."

*Id.* (citation and internal citations omitted).

The *Curley* court reasoned that while the officers could have conducted a more comprehensive investigation into the plaintiff's version of events, "the arresting officer does not have to prove plaintiff's version wrong before arresting him." *Id.* (citing *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989)).

While officers are not required to explore every possibility, "[i]f, on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depended on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims." *Jenkins*, 478 F.3d at 88.

In this matter, based upon the record, which includes multiple conflicting accounts of events, the Court finds that there are issues of fact regarding whether the officers had probable cause to arrest plaintiff sufficient to preclude summary judgment.[6]  Defendants claim that they arrested plaintiff based upon Ahigian's account of the events and their own personal observations. Upon their arrival at the scene, the responding officers found Ahigian bleeding with his eye partially closed.  Mary Ahigian (Ahigian's sister) completed a statement and averred that she saw plaintiff "get in Ken's face" and "push him" while they were on Caroline Street.  Similarly, two additional witnesses, Francis Skiff and Christine Bracken, City Tavern patrons, stated that

---

[6] On the motion, the parties submitted several witness statements, affidavits and a copy of the Incident Report.  While none of the documents are in proper evidentiary form, the parties' do not object to the admissibility of any of the documents.  Therefore, witness statements' made to the police and executed, sworn affidavits and the Incident Report will be considered herein.

plaintiff exhibited aggressive behavior toward both Ahigian and Skiff.  The women completed

Voluntary Statements claiming that they observed plaintiff attempt to get in between Lefco and

Ahigian and that plaintiff "pushed and pinched" Ahigian and yelled profanities at Skiff and

Ahigian.  Bracken stated that plaintiff attempted to "run at" Skiff but that she was restrained by

two larger people.  Sgt. Welch executed an affidavit which is annexed to defendants' motion

papers.  Sgt. Welch stated that plaintiff was "screaming at the scene" and "yelled and swore" at

Sgt. Welch.

Conversely, plaintiff claims that Ahigian was the aggressor and statements from various

witnesses support plaintiff's account of events.  Specfically, Uruskyj claims that while they were

outside on Caroline Street, she saw Ahigian "shove" plaintiff and curse and call her names.

Moreover, Colleen Waring, a patron at City Tavern on the evening of the incident, appeared at the

police station the evening of the incidence to give a statement.  Waring claims that she "saw a guy

getting into my friend Alicia's face and arguing with her.  Alicia then was pushed away by the

cop and then he pushed her in the face".  Waring stated that she was outside with the group and

observed Ahigian grab plaintiff's face and "push her" when plaintiff attempted to break up the

fight between Ahigian and Lefco.  As noted previously, Meyers' stated that plaintiff was trying to

prevent Ahigian and Lefco from fighting.

The Court has thoroughly reviewed the record including all witness statements and

affidavits.  While it is undisputed that Ahigian displayed visible injuries at the scene, this fact

does not establish that plaintiff was the aggressor.  Indeed, it is well established that Lefco and

LaChance were involved in a physical altercation with Ahigian.  Moreover, the Incident Report

contains no reference or mention of plaintiff as the aggressor.  In the report, Officer Cotter details

Ahigian's accounts and his complaints against Lefco and LaChance.  Several witnesses, including

13

Blake Saunders and Bradley Skiff, offered accounts of what transpired between Ahigian, Lefco and LaChance.  However, those witnesses did not provide any information regarding any altercation between plaintiff and Ahigian and stated that they did not see what "started the altercation".

In addition to the officers' observations, defendants also rely on Ahigian's account of events and what he relayed to the officers.  Of relevance in this context is the Affidavit of Michael J. Welch, submitted by defendants in support of the motion.  Sgt. Welch stated:

> Kenneth Ahigian immediately identified two males, Raymond Lefco and Jared LaChance, stating that they had assaulted him.
>
> Alicia Garafalo was interviewed at the scene; she indicated that Kenneth Ahigian had pushed her causing her to fall down twice, once in the City Tavern and once on the street.  I did not observe that Ms. Garafalo had sustained any injuries and when asked if she had, she replied in the negative.
>
> The unbiased witness statements indicated that Kenneth Ahigian was not the aggressor in the altercation and that Alicia Garafalo placed herself between Kenneth Ahigian and Raymond Lefco.

*See* Welch Aff. (paragraph numbers omitted).

While plaintiff admits that she was upset and stated that Sgt. Welch told her she would be arrested if she didn't calm down, plaintiff denies that she yelled or used any obscene language at Sgt. Welch.  Sgt. Welch opined that, "it appeared as if Ms. Garafalo had been consuming alcohol that evening and was an aggressor in the situation".  This opinion is conclusory and unsupported by any competent evidence.  The record does not contain any evidence to suggest that plaintiff underwent any sobriety tests at the scene.  Moreover, plaintiff was asked during her deposition whether she consumed any alcohol on the evening of the incident.  Plaintiff testified that she consumed two beers and shared a mixed drink with her friend.  When asked why she did not drive home, plaintiff denied that it was due to alcohol and claimed that she asked her friend to pick her

up because she was upset.  The disputed issues related to plaintiff's alcohol consumption preclude summary judgment.  *See Standt v. City of New York*, 153 F.Supp.2d 417 (S.D.N.Y. 2001) (the defendant claimed that the plaintiff's eyes were bloodshot and that he failed to walk a straight line with heel to toe but the plaintiff averred that his eyes were not bloodshot, that he walked the straight line but was never told to walk it in the "heel to toe" method).  In addition, Sgt. Welch's conclusions regarding plaintiff's alcohol consumption are not supported by any independent witness accounts.  *But cf. Raymond v. Bunch,* 136 F.Supp.2d 71, 79 (N.D.N.Y. 2001) (probable cause existed because the officer relied upon the independent observations of the nonparty witnesses who stated that the plaintiff was staggering, was slurring his speech, was having difficulty pouring a cup of coffee, and smelled of alcohol).

The record indicates that two days elapsed between the incident and plaintiff's arrest. There are clearly questions of fact in the record concerning how, when and why the initial decision to arrest plaintiff came about.  *Griffin v. Vill. of Frankfort*, 2012 WL 4491276, at *5 -6 (N.D.N.Y. 2012) ("[a] jury will have to decide if it is more likely that things happened as recalled by plaintiff-that is, that he was provoked and threatened by [the police chief] which led to the escalation of tensions, or that plaintiff tried to hit [the police chief] with the door, acted aggressive from the outset of their interaction with each other and simply blew up in a fit of loud anger and expletives when [the police chief] asked him what his problem was").

The timing of plaintiff's arrest, coupled with the varying, inconsistent accounts of what transpired on Caroline Street after the police arrived, factual disputes regarding what transpired at City Tavern and outside of the bar prior to the officers arriving at the scene, preclude this Court from awarding summary judgment on this issue.  *Anderson v. City of New York*, 817 F.Supp.2d 77, 87 -89 (E.D.N.Y. 2011).  The jury is the factfinder and charged with the duty of resolving the

facts surrounding the various physical altercations. *See Smart v. City of New York*, 2009 WL 862281, at *6 (S.D.N.Y. 2009) (because only the jury can properly decide whether the witnesses falsely stated that the plaintiff initiated the physical confrontation, there is a genuine issue of fact as to the existence of probable cause to commence criminal proceedings against the plaintiff for assault and resisting arrest); *see also Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir.2003) (denying summary judgment where officer's version of arrest conflicted with plaintiff's version).

Drawing all inferences in plaintiff's favor, a reasonable jury could conclude that the officers lacked probable cause for arrest. *See e.g. Williams v. City of New York,* 2007 WL 2214390, at *10 (S.D.N.Y. 2007) (the plaintiff claimed that he was unaware that the men were police officers because the officers were dressed in plain clothes and failed to show the plaintiff any form of police identification and the plaintiff asserted that he was never in possession of marijuana); *see also Rueda v. Kreth,* 2005 WL 323711, at *6 -7 (E.D.N.Y. 2005) (factual questions regarding the extent and reasonableness of the defendants' investigations and if a jury were to believe the plaintiff's account, then it could find that the plaintiff was not the intended recipient of the package, did not know it contained heroin, only signed for the package because of the misrepresentations concerning previous attempts at delivery, and did not conceal or attempt to conceal the package).

Equally important is the fact that the credibility of witnesses must be determined by the fact finder. On a motion for summary judgment, the court should not weigh evidence or assess the credibility of witnesses. *Nelson v. Metro–North Commuter R.R.*, 235 F.3d 101, 104 (2d Cir.2000). These determinations are within the sole province of the jury. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996) (citation omitted). Here, the Court cannot resolve

the factual discrepancies without weighing the credibility of the witnesses or determining the amount of weight accorded to each account of the incident.

Because the existence of probable cause turns on disputed issues of fact, the issue of probable cause is not amenable to disposition by summary judgment.  *See Williams*, 2007 WL 2214390, at *10.  Based upon the record herein, defendants' motion for summary judgment and dismissal of plaintiff's First Amendment retaliation claim is denied.

**B.**     **Equal Protection**

Defendants argue that plaintiff's "class of one" equal protection claim must fail because plaintiff cannot demonstrate that she and Ahigian were "similarly situated".  Moreover, defendants claim that plaintiff cannot establish that there was no rational basis to file charges against plaintiff and not Ahigian.  Plaintiff claims that she has produced sufficient evidence to establish an equal protection claim under both the "class of one" theory and selective enforcement.[7]

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike".  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  A plaintiff may bring an equal protection claim based on a selective enforcement theory by demonstrating that:  "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980).  The discrimination must be intentional or purposeful.  *Id*. at 609 (citations omitted). With respect to the second element, plaintiff must prove that "the

---

[7] Defendants do not respond to plaintiff's "selective enforcement" claims.

disparate treatment was caused by the impermissible motivation. They cannot merely rest on a showing of disparate treatment." *Anderson v. City of New York*, 817 F.Supp.2d 77, 94 -95 (E.D.N.Y. 2011) (citing *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)).

A plaintiff may also assert an equal protection claim "brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *City of Cleburne*, 473 U.S. at 439 (citation omitted); *see also Hogan v. County of Lewis, N.Y.,* 2013 WL 936513, at *10 (N.D.N.Y. 2013). "To establish either claim, [a plaintiff] must show both that [she was] treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a "class of one" claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." *Hogan*, 2013 WL 936513, at *10 (citations omitted). "While the Second Circuit has not resolved the question of whether there truly is a distinction between selective enforcement and class of one equal protection theories, courts in this circuit have repeatedly treated them as distinct theories with distinct elements of proof and have accordingly evaluated them as separate claims." *Lamothe v. Town of Oyster Bay,* 2012 WL 6720781, at *7 (E.D.N.Y. 2012) (citation omitted).

Although determining whether parties are similarly situated is typically "a fact-intensive inquiry," "[a] court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the persons to whom the plaintiff[s] compare [ ] [themselves] are similarly situated," *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir.2006) (internal citation omitted).   To establish the "similarly situated element", plaintiff must demonstrate that (1) 'no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential

treatment on the basis of a legitimate government policy,' and (2) 'the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.' " *Id.* (internal quotation marks omitted)).

### 1.      Similarly Situated

Under either theory, a reasonable juror could conclude that plaintiff and Ahigian were similarly situated. *See Hogan*, 2013 WL 936513, at *10 (the plaintiffs articulate a theory of selective enforcement, arguing that they were similarly situated to their neighbors against whom they had filed criminal complaints, but that the defendants pursued only the criminal complaints against the plaintiff). Plaintiff has alleged that Ahigian pushed her and caused her to sustain injury. Conversely, Ahigian has alleged that plaintiff pushed him. The record establishes that both Ahigian and plaintiff were engaged in similar misconduct and thus, were similarly situated "in all material respects." *Cf. McGuire v. Vill. of Tarrytown,* 2011 WL 2623466, at *8 (S.D.N.Y. 2011) (although the plaintiff stated that he informed the police officers that he was "assaulted, threatened [and] harassed," the defendant's actions do not rise to the same level of seriousness as the plaintiff's threatening behavior) (citation omitted).

### 2.      Selective Enforcement

With respect to the second element of selective enforcement, plaintiff vaguely argues that her equal protection claim is based on the defendants' intent to inhibit or punish the exercise of her constitutional rights and, "[a]s explained in Section I above, this it [sic] what Ms. Garafalo alleges here".[8] Plaintiff is referring to her claims that defendants violated her rights under the First Amendment when they arrested her in retaliation for complaining about Ahigian. Defendants do not respond to plaintiff's assertion. *See Nichols v. Vill. of Pelham Manor*, 974

---

[8] Plaintiff is referring to Section I of her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 27).

F.Supp. 243, 256 (S.D.N.Y. 1997) (the plaintiff alleged that his arrest was part of an attempt to restrict the exercise of his First Amendment right to freedom of expression and the defendant presented nothing to rebut this claim).  The district court may not grant a motion for summary judgment without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). If the movant does not meet its burden of production, then a court must deny summary judgment even if the non-movant does not oppose the motion. *See id.* Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's Equal Protection claim based upon selective enforcement is denied.

### 3.     Class of One

Defendants argue that plaintiff cannot establish that there was "no rational basis for charges to be filed against plaintiff" because police officers are afforded discretion in effectuating arrests.  Defendants rely upon the Second Circuit holding in *Golodner v. City of New London*, 443 F. App'x 622, 625 (2d Cir. 2011).  In that case, the plaintiff sued on equal protection grounds under a "class of one" theory claiming that the defendant/officer issued of a summons for breach of peace to the plaintiff but his neighbor, with whom Golodner had been involved in an altercation, received only a traffic citation.  *Id.*  The Court noted that the officer's report indicated that she spoke with a witness who confirmed the neighbor's version of events, and the plaintiff did not present contradictory this evidence.  *Golodner*, 443 F. App'x at 625.  The Court held, "[a] witness's corroboration of [the neighbor's] version of events, but not [the plaintiff's], would permit a rational person to distinguish between [the plaintiff] and [the neighbor]".  *Id.*

As detailed above, based upon the record and the varying accounts of events, a reasonable jury could find that the timing and circumstances surrounding plaintiff's arrest creates a sufficient inference that defendants "singled plaintiffs out for impermissible considerations". *See Vlahadamis v. Kiernan*, 837 F.Supp.2d 131, 152 (E.D.N.Y. 2011).  This case is distinguishable from *Golodner* because, in this matter, the officers had several conflicting accounts of what transpired.  Moreover, witness statements support plaintiff's version of events, which is drastically different from Ahigian's account.  Based upon all of the statements and evidence herein, a jury could determine that there is no rational basis to distinguish between Ahigian and plaintiff.

Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's equal protection claims based upon the "class of one" theory is denied.

## C.   False Arrest

"A § 1983 claim for false arrest, . . . including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law[.]"  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).  Under both New York law and the Fourth Amendment to the United States Constitution, the elements of a false arrest action are as follows: "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation omitted). Under New York and federal law, "probable cause serves as a complete defense to the charges of false arrest."  *See Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985).

In this case, defendants argue that the officers had probable cause to arrest plaintiff and rely upon the same arguments and factual allegations asserted in support of dismissal of plaintiff's

First Amendment retaliation claim.  As discussed *infra*, genuine issues of material fact preclude this Court from determining that probable cause existed, as a matter of law.  Thus, defendants' motion for summary judgment and dismissal of plaintiff's third and fourth claim is denied.

## III.   State Law Claims

Since the federal claims against defendants remain intact in this action, there is a basis for supplemental jurisdiction over plaintiff's state law claims against defendants.  *Bishop v. Best Buy, Co. Inc.*, 2010 WL 4159566, at *15 (S.D.N.Y. 2010).  Plaintiff voluntarily withdraws her abuse of process and negligence claims.  *See* Dkt. No. 27 at p. 2, n. 2.  Therefore, the court will address the remaining state law causes of action.

### A.   *Prima Facie* Tort

The New York Court of Appeals has recognized a cause of action sounding in " prima facie tort," in which a plaintiff must demonstrate: "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful ...." *D'Angelo-Fenton v. Town of Carmel,* 470 F.Supp.2d 387, 400 (S.D.N.Y. 2007) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332 (1983)).  "Although special damages  are ill-defined by New York courts, it is clear that '[s]pecial damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts . . . [t]hey must be fully and accurately stated.'" *Id*. (citing *Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270, 280 (4th Dep't 1977)).  There must be a showing of reasonable, identifiable, specific and measurable losses suffered by plaintiff . *See Bassim v. Howlett*, 191 A.D.2d 760 (3d Dep't 1993). "[S]pecial damages must be alleged with sufficient particularity to identify actual losses.... [R]ound sums without any attempt at

itemization are insufficient." *Bear, Stearns Funding, Inc. v. Interface Group–Nevada, Inc.*, 361 F.Supp.2d 283, 306 (S.D.N.Y. 2005).

In support of her claim for damages under this theory, plaintiff's complaint contains the following allegation:

> Defendants intentionally inflicted harm, resulting in special damages, without excuse or justification.

Pl. Cmplt. at ¶ 67.

Plaintiff's "Wherefore" clause does not contain any monetary amount and vaguely pleads for "an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction". During her deposition, plaintiff testified that she did not sustain any damage to any personal property or any permanent injury as a result of the occurrences. Moreover, plaintiff has failed to submit any evidence of special damages in opposition to the motion and erroneously argues that the issues regarding plaintiff's losses are for a jury to resolve.

"[E]ven when construed with the utmost of special liberality, the Court is unable to find special damages alleged consisting of a specific and measurable loss that is ordinarily not able to be recovered through a traditional tort claim." *Douglas v. New York State Adirondack Park Agency,* 2012 WL 3999763, at *33 (N.D.N.Y. 2012) (citing *Squire Records v. Vanguard Rec. Socy.*, 19 N.Y.2d 797, 798–99 (N.Y.1967) (finding that complaint sufficiently alleged special damages for purposes of prima facie tort claim, where it named specific customers lost)). Plaintiff's complaint lacks any specificity regarding damages. Indeed, plaintiff did not even plead a general amount or "round sum" that she seeks to recover. *See Wahlstrom v. Metro-North Commuter R. Co.,* 89 F.Supp.2d 506, 532 -533 (S.D.N.Y. 2000). The Court finds that plaintiff failed to allege special damages with the required specificity. *Mancuso v. Allergy Associates of*

*Rochester*, 70 A.D.3d 1499, 1501 (4th Dep't 2010) (the complaint contained only the general statement that plaintiff was "damaged in the amount of not less than [$1 million]").

Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's eight claim of *prima facie* tort is granted.

### B.   Intentional Infliction of Emotional Distress

Under New York law, a Plaintiff asserting a cause of action for intentional infliction of emotional distress "must demonstrate the following elements: '(i) extreme and outrageous conduct, (ii) an intent to cause ... severe emotional distress, (iii) a causal connection between the conduct and the injury, and (iv) the resultant severe emotional distress.' " *Allam v. Meyers*, 2011 WL 721648, *6 (S.D.N.Y. 2011) (quotation and other citations omitted). Intentional infliction of emotional distress claims are "highly disfavored ... under New York law" and it is rare for such claims to "survive dispositive motions.*" Hallgren v. Bell Atlantic Corp*., 2000 WL 726496, *3 (S.D.N.Y. 2000). In order to satisfy the requisite "extreme and outrageous" element, the alleged conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Allam*, 2011 WL 721648, at *6 (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985)) (other citations omitted).  Allegations that defendant acted intentionally or recklessly, even if true, do not constitute the requisite egregiousness.  *Vumbaca v. Terminal One Group Ass'n L.P.,* 859 F.Supp.2d 343, 378 (E.D.N.Y. 2012).

Conduct required to sustain a claim for intentional infliction of emotional distress must be "atrocious," "utterly intolerable"  . *Toliver v. City of New York,* 2011 WL 4964919, at *8 (S.D.N.Y. 2011) (citing *Li v. Aponte*, 2008 WL 4308127, at *9 (S.D.N.Y. 2008) (finding the plaintiff's allegations insufficient to state a claim for intentional infliction of emotional distress

where plaintiff was falsely accused of violating the law and physically assaulted by law enforcement officer)); *Kirk v. Metropolitan Transportation Auth.*, 2001 WL 258605, at *8 (S.D.N.Y. 2001) (finding "false accusations of crime and threats of prosecution" insufficient to state a claim for intentional infliction of emotional distress where officers were acting "within the scope of their duties").

Defendants argue that plaintiff's intentional infliction of emotion distress claim is subject to dismissal because it is based upon "false accusations and charges" by Ahigian, a non-party and plaintiff's allegation that defendants could have conducted a more thorough investigation.  Thus, defendants' allege that plaintiff has failed to establish conduct that was so outrageous or extreme as to "go beyond all possible bounds of decency".  Plaintiff contends that defendants, again, have mischaracterized her claim.  Plaintiff asserts that the claim is based upon the fact that defendants intentionally brought false charges against her in retaliation for her complaints about Ahigian. Plaintiff relies upon her prior arguments in support of this cause of action.

Here, based upon the record, plaintiff's claim fails for several reasons.  First, the Court finds that plaintiff has failed to produce competent, admissible evidence that defendants conduct was extreme or outrageous.  "The acts of the defendants in connection with plaintiffs' arrest do not amount to the type of outrageous conduct'"beyond all possible bounds of decency' and 'utterly intolerable in a civilized community' as to be actionable." *Stampf v. Long Island R.R. Auth.,* 2010 WL 2517700, at *11 (E.D.N.Y. 2010) (citations omitted).  Moreover, plaintiff's claim for intentional infliction of emotional distress is "subsumed by her state law tort claim for false arrest", which rests on the same set of facts.  *Sankar v. City of New York,* 867 F.Supp.2d 297, 314 (E.D.N.Y. 2012).

Accordingly, defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim is granted.

## IV.    QUALIFIED IMMUNITY

Defendants claim that summary judgment is warranted based upon qualified immunity. Defendants reiterate that plaintiff did not have a constitutional right to file charges against Ahigian and further, that defendants acted with probable cause when arresting plaintiff.

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir.2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Mollica v. Volker*, 229 F.3d 366, 370–71 (2d Cir.2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [the] officers ... was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if ... it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir.2007) (quotation and other citation omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374

F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that ... it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case." *Id.* (quotation and other citations omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir.2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995) (quotation omitted).

In light of the drastically different accounts of what occurred on October 11, 2009, the Court finds that questions of fact exist which preclude granting defendants' motion at this time. While qualified immunity may exist even if there are material questions of fact as to probable cause, in this matter, as discussed above, it is clear that officers of reasonable competence could disagree on the matter. *Rae v. County of Suffolk*, 693 F.Supp.2d 217, 226 (E.D.N.Y. 2010) (internal citation omitted). Moreover, for the Court to find that defendants are entitled to qualified immunity, it would have to engage in improper credibility determinations, which it is unwilling to do. *See Robison v. Via*, 821 F.2d 913, 923–24 (2d Cir.1987) (holding that summary judgment was inappropriate where the parties disputed material facts).

Defendants also move for dismissal of plaintiff's complaint, in its entirety, against the Commissioner of Public Safety because plaintiff has failed to establish any connection to the incident. In response, plaintiff has withdrawn her claims against the Commissioner of Public Safety. *See* Dkt. No. 27, p. 2, n.1.

## CONCLUSION

**IT IS HEREBY**

**ORDERED**, that defendants' motion for summary judgment (Dkt. No. 24) is **GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's First Amendment retaliation cause of action (first claim) is **DENIED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's Equal Protection cause of action (second claim) is **DENIED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's false arrest causes of action (third and fourth claims) is **DENIED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's *prima facie* tort cause of action (eighth claim) is **GRANTED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiffs' abuse of process and negligence claims (fifth and sixth claims) is **GRANTED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's intentional infliction of emotional distress cause of action (seventh claim) is **GRANTED**; it is further

**ORDERED**, the defendants' motion for summary judgment and dismissal of plaintiff's complaint based upon qualified immunity is **DENIED**; it is further

**ORDERED**, that defendants' motion for summary judgment and dismissal of plaintiff's complaint against the Commissioner of Public Safety is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  March 20, 2013
Albany, New York

Mae A. D'Agostino
U.S. District Judge

29